955 So.2d 550 (2007)
James D. FORD, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-1611.
Supreme Court of Florida.
April 12, 2007.
*551 Ryan Thomas Truskoski, Orlando, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, Florida and Carol M. Dittmar, Senior Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
This case is before the Court on appeal from an order denying a motion to vacate a sentence of death under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a sentence of death, this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. For the reasons expressed below, we affirm the circuit court's order denying postconviction relief.

FACTS AND PROCEDURAL HISTORY
The facts of this crime are set forth in our opinion from Ford's direct appeal, Ford v. State, 802 So.2d 1121, 1125-27 (Fla.2001). For the purposes of these proceedings, we note that Ford was convicted of sexual battery with a firearm, child abuse, and two counts of first-degree murder for the deaths of Kimberly and Gary Malnory. Id. at 1126. The jury recommended death on each murder count by an eleven-to-one vote, and the court imposed a sentence of death on each count based on four aggravating circumstances,[1] several statutory mitigating circumstances,[2] and several nonstatutory mitigating circumstances.[3]Id. at 1126-27. The trial court *552 also imposed a sentence of 19.79 years' imprisonment (with a three-year mandatory minimum term) on the sexual battery with a firearm count and a concurrent five-year sentence on the felony child abuse count. Id. at 1127. This Court denied relief on all claims on Ford's direct appeal, affirming Ford's death sentences, id. at 1125, and the U.S. Supreme Court denied certiorari review in 2002. See Ford v. Florida, 535 U.S. 1103, 122 S.Ct. 2308, 152 L.Ed.2d 1063 (2002).
In 2003, Ford filed a motion for postconviction relief, alleging three claims of ineffective assistance of counsel: (1) trial counsel pursued the defense of voluntary intoxication over Ford's objection and without his permission or consent; (2) trial counsel waived Ford's speedy trial rights over his objection and without his permission; and (3) trial counsel failed to present evidence showing that Ford was mentally retarded. The trial court held an evidentiary hearing on May 12, 2004; during this hearing, Ford abandoned his third claim for relief.[4] Three witnesses were called at the evidentiary hearing: Ford appeared on his own behalf, and his two trial attorneys, Paul Sullivan and Paul Alessandronio, appeared on behalf of the State. The trial court issued its order denying relief on all claims on July 12, 2004, and this appeal follows.

POSTCONVICTION CLAIMS
Ford asserts that the trial court improperly denied relief on his two remaining ineffective assistance of counsel claims, regarding the use of a voluntary intoxication defense and the waiver of his right to a speedy trial.
Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance *553 under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted). Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla. 2004).
There is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "Judicial scrutiny of counsel's performance must be highly deferential." Id. In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."

1. Voluntary Intoxication Defense
Ford essentially argues that his trial counsel was ineffective for advancing a voluntary intoxication defense despite the fact that he did not agree to it and felt it would operate as an admission of guilt to the murder charges against him.[5] First, we find this claim to be refuted by the record, inasmuch as it makes clear that Ford's intoxication was not advanced as an admission of his guilt. Ford himself testified at the evidentiary hearing below that his attorneys never admitted his guilt or told the jury that he was responsible for the crimes. The trial records illustrate that the primary defense theory at Ford's trial was to question the adequacy of the State's case, focusing on mistakes made in the collection, preservation, and testing of physical evidence, and how human error could diminish the force of the scientific evidence admitted. Further, to the extent *554 that voluntary intoxication was advanced as a defense, the transcripts show that Sullivan used such evidence not as an admission of guilt, but to suggest that Ford would have been too intoxicated to spend the entire day planning the crimes, as the State suggested, and thus could not have been responsible for them. Accordingly, Ford's claim that defense counsel admitted his guilt through the use of a voluntary intoxication defense does not stand up to scrutiny, first because the evidence was used to suggest Ford was not responsible for the crimes; second, to the extent it was offered as a defense, it was done to defeat the premeditation element of the murder charge and was only mentioned briefly towards the end of defense counsel's closing arguments. The record demonstrates that voluntary intoxication clearly did not operate as a focal point of defense counsel's overall trial strategy. Thus, we find this argument to be refuted by the record.
We also agree with the lower court that, to the extent defense counsel did present evidence to the jury regarding Ford's possible intoxication on the day of the murders, such conduct by defense counsel was strategic in nature and does not constitute deficient performance under Strickland. As noted above, this Court in Occhicone clearly established that counsel's decisions regarding trial strategy are protected if other courses of action were considered and if the decision was reasonable under the norms of professional conduct. 768 So.2d at 1048. In the instant case, defense counsel was faced with significant direct evidence linking Ford to the crime, the client's repeated denial of involvement, and the expectation that the State itself would introduce evidence of Ford's alcohol consumption on the day of the crime. Testimony from the evidentiary hearing below makes clear that defense counsel consulted with Ford on how to reconcile these factors. Ford's own testimony at the evidentiary hearing illustrates that he agreed to the jury instruction on voluntary intoxication; furthermore, he agreed that the voluntary intoxication defense was presented in such a way as to suggest that Ford had not committed the crimes because he was too intoxicated to have performed them consistent with how the State theorized the murders had occurred. The defense memorandum introduced by the State at the evidentiary hearing further emphasizes that Ford's defense team was struggling with how to both respect Ford's claims of innocence while attempting to use the evidence of possible intoxication to his advantage.
Accordingly, we conclude that Ford has not overcome the presumption that "the challenged action `might be considered sound trial strategy,'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052, since trial counsel presented evidence of intoxication to the jury only after much deliberation and in a fashion designed to serve the best interests of the client. As stated in Dufour v. State, 905 So.2d 42, 52 (Fla.2005), "[t]his Court has held that it will not second-guess counsel's strategic decisions concerning whether an intoxication defense will be pursued." For all of the reasons discussed above, we uphold the trial court's denial of relief on this claim.[6]

2. Right to a Speedy Trial
Ford also alleges that trial counsel was ineffective for waiving his right to a *555 speedy trial, claiming this allowed the State additional time to put together a stronger case against him. Furthermore, Ford asserts that he consistently instructed trial counsel not to waive any of his rights, and that he was coerced into agreeing otherwise.
In denying this claim after the evidentiary hearing, the trial court noted that it was Ford himself who insisted on the DNA testing that necessitated continuances, arguing that it would exonerate him of the crimes; furthermore, it was apparent that counsel could not have rendered effective assistance if Ford's right to an immediate and speedy trial had been exercised. The lower court found that the defense strategy, evidence, and the team of experts put together by counsel constituted not only a reasonable strategy, but a strategy necessary to adequately defend Ford's case. We find no error in the lower court's conclusion that, as with the first claim, Ford has failed to establish deficient performance of counsel, thereby failing to satisfy the first prong of Strickland.
First, Ford's arguments regarding the speedy trial waiver are not borne out by the testimony given at the evidentiary hearing below. On the one hand, Ford testified that he did not realize he was waiving his speedy trial right when he agreed to trial counsel's first request for a continuance. Echoing this concern, Sullivan testified that despite his considerable efforts to communicate his strategy, "looking back," he realized perhaps Ford may not have clearly understood both the need for the continuance and how it would serve as a waiver of his speedy trial rights. However, the testimony is clear from all three witnesses below, Ford and the attorneys, that the speedy trial issue was frequently discussed, and that each time it would surface, both Sullivan and Alessandronio would ultimately convince Ford that the additional time was necessary to adequately prepare his defense. In addition, Ford did not dispute that he insisted upon the need for DNA testing, believing it would exonerate him, and also that he provided a lengthy list of possible witnesses to his attorneys to use for his defense, each of whom would need to be located, interviewed, and deposed.
The testimony regarding any supposed coercion is conflicting. Ford testified that he felt forced into agreeing to a continuance after a meeting with his attorneys at the courthouse. Sullivan testified, however, that he did not specifically remember this meeting, and Alessandronio remembered only that Ford had agreed that the attorneys should ask for more time if they felt it was necessary. There were no additional details given in the briefs or the testimony below regarding when this meeting took place. However, based on a review of the trial record, it appears that Ford is referring to a hearing that took place on February 5, 1999, in which the State submitted a written motion for a continuance and defense counsel made a similar oral motion. The trial judge's order granting the joint motion for a continuance states: "The Court called a recess to allow counsel to consult with Ford as to whether the Defendant would join in the defense request for continuance. . . . The Defendant, after private consultation with counsel, returned, and on the record joined in the defense request for the continuance." The circuit court minutes from that hearing indicate the Court asked Sullivan that, if he wished to continue the trial, she would like a speedy trial waiver from Ford, as it appeared to her that these rights had already been waived. The minutes then indicate that the Court took a thirty-minute recess, and that Ford agreed to continue the case upon returning.
*556 Ultimately, we conclude that Ford has not demonstrated a successful Strickland claim because we find no error in the trial court's conclusion that trial counsel's actions were professionally reasonable. Sullivan testified not only to his consultations with Ford, but that a refusal to waive Ford's right to a speedy trial could have resulted in the State having the DNA testing expedited, leaving the defense with no way to counter the compelling evidence of guilt. Both attorneys testified that they would not have been able to present the substantial defense they did if they were forced to comply with the limited speedy trial time frame given the complex nature of the case and evidence involved. In addition, all three postconviction witnesses testified that they discussed Ford's speedy trial rights together frequently, and each time his attorneys were successful in convincing Ford to agree that additional time was necessary. Based on the testimony presented below, we agree with the trial court that trial counsel made a reasoned, strategic decision regarding the need for more time, discussed these needs with the client, and asked for the continuances necessary to prepare a defense. Accordingly, we agree with the court below that Ford has not established deficient performance on the part of trial counsel, and thus his ineffective assistance of counsel claim must fail.

CONCLUSION
For the reasons expressed above, we affirm the circuit court's denial of postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The court found that the following aggravating circumstances had been established for both murders and assigned each a degree of weight: (1) the murder was committed in an especially heinous, atrocious, or cruel manner (HAC) (great weight); (2) the murder was committed in a cold, calculated, and premeditated fashion (CCP) (great weight); (3) the murder took place during the commission of a sexual battery (great weight); and (4) Ford previously was convicted of another capital felony, i.e., the contemporaneous murder (great weight). See Ford, 802 So.2d at 1127 n. 1.
[2] The court addressed the following statutory mitigating circumstances as they related to both murders and assigned each a degree of weight: (1) no significant history of prior criminal activity (proven, some weight); (2) extreme mental or emotional disturbance (not proven, no weight); (3) extreme duress (not proven, no weight); (4) impaired capacity (not proven, no weight); (5) the young mental age of the defendant (proven, very little weight). See Ford, 802 So.2d at 1127 n. 2.
[3] The court addressed the following nonstatutory mitigating circumstances as they related to both murders and assigned each a degree of weight: (1) Ford was a devoted son (proven, very little weight); (2) Ford was a loyal friend (proven, very little weight); (3) Ford is learning disabled (proven, no weight); (4) mild organic brain impairment (not proven, no weight); (5) developmental age of fourteen (proven, no weight); (6) family history of alcoholism (this circumstance was proven but it is not mitigating vis-a-vis the death penalty in general, no weight); (7) chronic alcoholic (proven, very little weight); (8) diabetic (this circumstance was proven but it is not mitigating vis-a-vis the death penalty in general, no weight); (9) excellent jail record (proven, some weight); (10) engaged in self-improvement while in jail (proven, some weight); (11) the school system failed to help (proven, very little weight); (12) emotional impairment (not proven, no weight); (13) mentally impaired (not proven, no weight); (14) impaired capacity (not proven, no weight); (15) not a sociopath or a psychopath (this circumstance was proven but it is not mitigating vis-a-vis the death penalty in general, no weight); (16) not antisocial (this circumstance was proven but it is not mitigating vis-a-vis the death penalty in general, no weight); (17) the alternative sentence is life without parole (this circumstance was proven but it is not mitigating vis-a-vis the death penalty in general, no weight). See Ford, 802 So.2d at 1127 n. 3.
[4] As noted in the order denying relief, defense counsel either did not obtain expert witnesses regarding mental retardation or they were unavailable. However, after the trial court explained that it would dismiss this claim without prejudice and reconsider it should Ford renew the issue at a later time, he stated at the evidentiary hearing that he no longer wished to pursue this claim and was waiving it. The court conducted a lengthy colloquy with Ford on the topic and concluded that he knowingly and intelligently waived this claim.

In addition, the State introduced testimony and medical records related to Ford's mental status. Ford's trial attorney, Paul Sullivan, testified that all mental retardation testing done prior to trial indicated that Ford did not suffer from any retardation. In addition, the records introduced indicated that Ford had a full scale IQ of 88. According to the trial court in its order denying relief, reviewing those records confirmed that Ford was warranted in waiving this claim.
[5] In denying relief on this claim, the court below dismissed it as moot, finding that she did not permit voluntary intoxication as a defense during the guilt phase of the trial. She noted that the voluntary intoxication jury instruction was only given during the penalty phase of the trial, and thus went solely to mitigation, not to guilt.

However, Ford correctly asserts that the trial judge did permit voluntary intoxication as a defense during the guilt phase. The trial record clearly indicates that a voluntary intoxication instruction was given in relation to the charge of first-degree premeditated murder and child abuse. However, based on our review of the full record in this case, and our close scrutiny of Ford's substantive claims, we conclude that Ford is not entitled to relief based on this one error in the trial judge's order denying relief. Because we have independently determined that Ford's claims are without merit, we find that error harmless beyond any reasonable doubt.
[6] Since we find that Ford has failed to establish deficient performance, this is sufficient to conclude that he has not satisfied the Strickland test for ineffective assistance of counsel. See Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001) ("[B]ecause the Strickland standard requires establishment of both prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong.").