964 So.2d 213 (2007)
John BEASLEY, Appellant.
v.
STATE of Florida, Appellee.
No. 2D06-549.
District Court of Appeal of Florida, Second District.
August 24, 2007.
John Beasley, pro se.
Bill McCollum, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
John Beasley appeals the denial of three grounds of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Although we approve the summary denial of two of those grounds, we must reverse the order denying relief as to the Kremaining one because Beasley established that counsel was ineffective in counseling him concerning a plea offer.

I. Statement of the Case
Beasley was charged with burglary of a dwelling, grand theft of a firearm, possession of a firearm by a convicted felon, three counts of dealing in stolen property, and two counts of giving false verification to a pawn shop broker. The offenses allegedly occurred on September 24, 2001. Prior to trial, the State offered Beasley a plea agreement whereby he would enter a guilty plea to all the charges and, in return, his maximum sentence for burglary of a dwelling would be limited to fifteen years' imprisonment as a Prison Releasee Reoffender (PRR).[1] Beasley did not accept the plea offer.
*215 After a jury trial, Beasley was found guilty of possession of a firearm by a convicted felon, dealing in stolen property, and giving false verification to a pawn shop broker. The jury acquitted Beasley of the burglary charge. He was sentenced as a habitual felony offender to concurrent sentences of five years' imprisonment for the possession of a firearm, grand theft,[2] and giving false verification to a pawn shop broker. He was sentenced to thirty years' imprisonment as a habitual felony offender for dealing in stolen property.

II. The Motion for Postconviction Relief
Beasley filed a timely motion for postconviction relief asserting in ground two that trial counsel was ineffective because she advised him not to accept the plea bargain offered by the State. Beasley asserted that counsel told him that he did not qualify for treatment as a PRR and the minimum mandatory fifteen-year sentence under the PRR statute would have been harsher than that which he could receive if he were found to be guilty of all offenses. In the motion, Beasley indicated that this advice was correct at the time it was given. However, immediately before the jury selection process commenced, the State served both Beasley and his trial counsel with notice that it intended to seek an enhanced sentence under the habitual felony offender statute.[3] The effect of the notice was to increase Beasley's exposure from a possible sentence of fifteen years' imprisonment to thirty years' imprisonment.
At the evidentiary hearing on ground two of the motion, Beasley asserted that trial counsel was ineffective for failing to inform him of the consequences of the habitual offender notice and that his sentence could be doubled. He stated that had he known the ramifications of the notice and that he was facing thirty years as a habitual felony offender he would have taken the plea offer of fifteen years and would not have "rolled the dice" with a jury. Although Beasley admitted that he had been in prison three times previously, he testified that he had not learned the consequences of habitual felony offender sentencing. He stated that his prior sentences were not long because he had received so much gain time and he was emphatic that he had never spoken to other inmates about habitual offender sentencing.
Additionally, Beasley testified that the fifteen-year offer by the State still was viable until the trial commenced. The prosecutor testified and confirmed that the offer of fifteen years as a PRR was still an option at the time the notice of intent was served on Beasley and his trial counsel.
Melissa Wilson, Beasley's trial counsel, did not refute his allegations. She admitted that she counseled him to reject the State's plea offer. When questioned, Attorney Wilson stated that she did not recall that "absolutely 100% [Beasley] want[ed] a trial." This statement supports Beasley's allegation that he would have accepted the plea agreement had he been informed of the consequences of the habitual felony offender notice.
Further, Attorney Wilson did not remember what she told Beasley about the habitual felony offender notice. Attorney Wilson stated that she had no notes concerning her conversation with Beasley about the notice because she was informed of the State's action when they were in the holding cell immediately prior to jury selection. She indicated that usually she would have informed any defendant of the *216 consequences, but due to the fact that the notice was served with such a short time period before they appeared in court, she could not accurately testify concerning what statement she may have made to Beasley. Attorney Wilson conceded that if Beasley had accepted the plea he would have faced only fifteen years as a PRR which is less than the thirty years as a habitual felony offender which he received. She testified that after the jury returned its verdict, she contacted the prosecutor and told him, "I'm not sure I properly advised this individual is there something we can do to make a deal and [the prosecutor] declined me."

III. The Postconviction Court's Ruling
In the order denying relief on ground two, the postconviction court specifically found, "[d]efense counsel did not then discuss the legal effects of the notice with her client." However, the court concluded, "Even assuming ineffective assistance of counsel for failure to explicitly and directly confer with the defendant in the courtroom on 18 February when the notices were delivered that HFO enhancement would permit the Court to double the sentence, the Court finds that the defendant was not prejudiced as a result of that deficiency, as required by the second prong of Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]."
The order went on to state that the court did not believe Beasley's testimony that if he had been advised his sentence could be doubled he would have accepted the plea. The court concluded that Beasley was experienced in the criminal justice system and knew the maximum sentence he faced but "elected to take his chances with believing that he would not do any worse than the 15 year PRR offer." The postconviction court chose not to believe Beasley's testimony that he had not learned the consequences of a habitual offender sentence while in prison even though Beasley's testimony that he was unaware of the consequences was unrefuted.

IV. Analysis
In Schwab v. State, 814 So.2d 402, 408 (Fla.2002), the supreme court discussed the two-prong test set forth in Strickland, 466 U.S. at 687, 104 S.Ct. 2052, which is used to analyze claims of ineffective assistance of counsel. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms." Id. (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). Next, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). Because both prongs of the Strickland test present mixed questions of law and fact, this court employs a mixed standard of review, deferring to the postconviction court's factual findings that are supported by competent, substantial evidence but reviewing the court's legal conclusions de novo. Ford v. State, 955 So.2d 550, 553 (Fla.2007).
When examining whether trial counsel was effective in instances where a plea agreement has been offered by the State, the supreme court set out a three-part test in Cottle v. State, 733 So.2d 963, 967 (Fla.1999). The court held that a prima facie case of ineffective assistance of counsel based on the rejection of a plea offer would be made if a defendant proved (1) counsel failed to communicate a plea offer or misinformed the defendant concerning the penalties; (2) the defendant would have accepted the plea offer but for the inadequate communication; and (3) acceptance of the plea offer would have resulted in a lesser sentence. The prejudice *217 to the defendant that Strickland requires "is inherent in the defendant's inability to make an informed decision concerning whether to accept the plea offer." Eristma v. State, 766 So.2d 1095, 1096 (Fla. 2d DCA 2000) (citing Cottle, 733 So.2d at 969); see Rudolf v. State, 851 So.2d 839, 841 (Fla. 2d DCA 2003).

V. Conclusion
In the present case, as discussed above, the postconviction court's factual findings that Beasley had knowledge of the consequences of the habitual felony offender notice are not supported by competent, substantial evidence. Beasley has satisfied the three-part test set out in Cottle and has presented a prima facie case of ineffective assistance of trial counsel. Accordingly, we reverse the postconviction court's order denying ground two of Beasley's motion and remand. Although we have no authority to require the State to reoffer its original plea offer on remand, we suggest that the parties should engage in a "good faith resumption of plea negotiations." See Feldpausch v. State, 826 So.2d 354, 357 (Fla. 2d DCA 2002); see Rudolf, 851 So.2d at 841-42; Eristma, 766 So.2d at 1097. If negotiations take place but fail, Beasley shall be given a new trial.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT, C.J. and CASANUEVA, J., Concur.
NOTES
[1] § 775.082(9)(a)(1)(q), Fla. Stat. (2001).
[2] The judgment and sentence for grand theft were ultimately vacated.
[3] § 775.084(1)(a), Fla. Stat. (2001).