# Supreme Court of Florida

_____

No. SC2025-0110

_____

**JAMES D. FORD,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

February 7, 2025

PER CURIAM.

James D. Ford, a prisoner under sentence of death for whom a warrant has been signed and an execution set for February 13, 2025, appeals the circuit court's order summarily denying his third successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons below, we affirm.

## I. BACKGROUND

On April 6, 1997, Ford brutally murdered Greg Malnory and his wife, Kimberly, at the South Florida Sod Farm, where Ford and

Greg were coworkers. The three had planned to go fishing that afternoon at the sod farm. Greg was shot in the back of the head, execution style, with a single-shot rifle. He had also been hit in the head and face at least seven times with a blunt instrument, consistent with an axe. His throat was slit nearly from ear to ear, so deeply that underlying muscle tissue was exposed. The physical evidence led to the inescapable conclusion that Greg was first shot in the head, but only disabled by the bullet, resulting in Ford savagely beating him to death and slitting his throat while Greg was on his back in the middle of a field.

Kimberly suffered nine blunt force injuries to her head, one of which fractured and penetrated her skull. Ford raped Kimberly and stuck the barrel of his rifle in her mouth before firing through her palate. Defensive wounds on the backs of Kimberly's arms indicated that she put up a struggle.

Near the bodies, in an isolated, wooded area of the vast sod farm, the Malnorys' twenty-two-month-old daughter was found strapped in her car seat in the Malnorys' truck, with the doors wide open. The little girl had been exposed to the elements overnight

and for more than eighteen hours. She was covered in mosquito bites and her mother's blood, dehydrated, and flushed with heat.

An abundance of physical evidence, including multiple DNA matches and the murder weapons, as well as eyewitness testimony, provided overwhelming proof that Ford was responsible for the murders and the rape. He was convicted of two counts of first-degree murder, sexual battery with a firearm, and child abuse. *Ford v. State*, 802 So. 2d 1121, 1125-27, 1131 (Fla. 2001).

At the penalty phase, Ford presented more than two dozen witnesses, including two mental health professionals. But the jury recommended death for each murder by a vote of eleven to one. The trial court ultimately sentenced Ford to death for each murder based on four aggravating circumstances,[1] two statutory mitigating

---

1. The court found that the following aggravating circumstances had been proven beyond a reasonable doubt for both murders and assigned each a degree of weight: (1) the murder was committed in an especially heinous, atrocious, or cruel manner (HAC) (great weight); (2) the murder was committed in a cold, calculated, and premeditated fashion (CCP) (great weight); (3) the murder took place during the commission of a sexual battery (great weight); and (4) Ford previously was convicted of another capital felony, i.e., the contemporaneous murder (great weight).

circumstances,[2] and thirteen "nonstatutory" mitigating circumstances.[3]  *Id.* at 1126-27 & nn.1-3.  This Court affirmed Ford's convictions and sentences on direct appeal.  *Id.* at 1136.  The convictions and sentences became final when the United States Supreme Court denied certiorari review in 2002.  *Ford v. Florida*, 535 U.S. 1103 (2002).

In the decades since, Ford has unsuccessfully challenged his convictions and sentences in state and federal court.  *See Ford v. State*, 955 So. 2d 550 (Fla. 2007) (affirming denial of Ford's initial motion for postconviction relief); *Ford v. Sec'y, Dep't of Corr.*, No.

---

2. The court found two statutory mitigating circumstances established as to both murders: (1) no significant history of prior criminal activity (some weight); and (2) the young mental age of the defendant (very little weight).

3. The court found the following "nonstatutory" mitigating circumstances established as to both murders: (1) Ford was a devoted son (very little weight); (2) Ford was a loyal friend (very little weight); (3) Ford is learning disabled (no weight); (4) developmental age of fourteen (no weight); (5) family history of alcoholism (no weight); (6) chronic alcoholic (very little weight); (7) diabetic (no weight); (8) excellent jail record (some weight); (9) engaged in self-improvement while in jail (some weight); (10) the school system failed to help (very little weight); (11) not a sociopath or a psychopath (no weight); (12) not antisocial (no weight); and (13) the alternative sentence is life without parole (no weight).

2:07-cv-333-FtM-99SPC, 2009 WL 3028886 (M.D. Fla. Sept. 17, 2009) (dismissing as untimely his federal habeas petition, filed under 28 U.S.C. § 2254); *Ford v. McNeil*, 561 U.S. 1002 (2010) (granting certiorari review and remanding the denial of a certificate of appealability, vacating, and remanding for further consideration in light of *Holland v. Florida*, 560 U.S. 631 (2010)); *Ford v. Sec'y, Fla. Dep't of Corr.*, No. 2:07-cv-333-FtM-36SPC, 2012 WL 113523 (M.D. Fla. Jan. 13, 2012) (concluding after remand that Ford was not entitled to equitable tolling for his federal habeas petition under *Holland*); *Ford v. State*, 168 So. 3d 224 (Fla. 2015) (table) (affirming denial of Ford's first successive motion for postconviction relief and denying his request to file a belated state petition for a writ of habeas corpus); *Ford v. State*, 237 So. 3d 904 (Fla. 2018) (affirming denial of Ford's second successive motion for postconviction relief and denying his petition for a writ of habeas corpus).

Governor Ron DeSantis signed Ford's death warrant on January 10, 2025.  Ford then filed a third successive motion for postconviction relief under rule 3.851, raising two claims: (1) Ford's death sentence is unconstitutional under *Roper v. Simmons*, 543 U.S. 551 (2005), and the Eighth and Fourteenth Amendments

because his mental and developmental age is below eighteen; and (2) executing Ford would violate his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments in light of *Erlinger v. United States*, 602 U.S. 821 (2024). The circuit court summarily denied both claims. This appeal follows.

## II. ANALYSIS

Ford raised only two claims in his third successive motion, but he comes to this Court with three. We address each in turn to explain why no relief is warranted.

### A. Applicability of rule 3.851(d)(2)

Ford claims for the first time on appeal from the denial of his third successive motion that application of Florida Rule of Criminal Procedure 3.851(d)(2) is unconstitutional when applied during litigation under an active death warrant because it violates his right to due process under the Fourteenth Amendment and the Florida Constitution; his federal Eighth Amendment right to narrowly tailored individualized sentencing and his Florida constitutional right against cruel and unusual punishment; his federal Sixth Amendment right to effective counsel; and his Florida constitutional right to access the courts.

- 6 -

Rule 3.851 limits the filing of a motion for postconviction relief to within one year of the date the defendant's conviction and sentence become final, unless it alleges one of the following exceptions set forth in subdivision (d)(2):

> (A) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or

> (B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or

> (C) postconviction counsel, through neglect, failed to file the motion.

By asking this Court to find that this subdivision is inapplicable to defendants under an active death warrant, Ford is asking this Court to allow defendants upon the scheduling of an execution date to be permitted to litigate anew any claim that was (and likely those that should have been) raised previously and to receive a ruling on the merits of those claims. Ford's position is without any legal support. In crafting the terms and conditions that govern criminal appeals and collateral review, the Legislature provided "that all terms and conditions of direct appeal and collateral review be strictly enforced, including the application of

procedural bars, to ensure that all claims of error are raised and resolved at the first opportunity." § 924.051(8), Fla. Stat. The litigation of a successive motion for postconviction relief filed by a defendant under an active death warrant is collateral review. If the Legislature intended to suspend procedural bars for claims raised by defendants under active death warrants, it could have done so. *See Cason v. Fla. Dep't of Mgmt. Servs.*, 944 So. 2d 306, 315 (Fla. 2006) ("[T]he Legislature 'knows how to' accomplish what it has omitted in the statute in question.").

Ford's claim that the procedural bars applied to his claims result in a denial of due process is conclusory. "Due process requires that a defendant be given notice and an opportunity to be heard on a matter before it is decided." *Barwick v. State*, 361 So. 3d 785, 790 (Fla.) (quoting *Asay v. State*, 210 So. 3d 1, 27 (Fla. 2016)), *cert. denied*, 143 S. Ct. 2452 (2023). Ford does not allege that he was denied notice and an opportunity to be heard. He is simply objecting to the fact that he does not have the opportunity to be reheard.

Ford also claims that procedural bars effectively deny him access to courts and the right to counsel and subject him to cruel

and unusual punishment. The fact that Ford is not permitted to relitigate issues now does not violate his access to the courts to litigate valid claims in accordance with the procedural rules of this state. The fact that counsel cannot relitigate claims that have already been raised does not deprive him of the right to counsel, who was free to raise appropriate claims. And the application of procedural bars after the signing of his death warrant did not prevent Ford from attempting to show that his case is not among the most aggravated and least mitigated at the appropriate time (or times) and through the appropriate channels, nor did it deprive Ford of an individualized sentencing or otherwise violate the Eighth Amendment or article 1, section 17 of the Florida Constitution. Rule 3.851(d)(2) was not unconstitutionally applied to Ford's third successive motion for postconviction relief. And Ford presents no authorities that support his argument on this point.

## B. Extension of *Roper*

Ford argues that the circuit court erred in summarily denying Ford's claim that because he has a mental and developmental age below eighteen years, his death sentence is unconstitutional under *Roper v. Simmons*, 543 U.S. 551 (2005), and the Eighth and

Fourteenth Amendments.  Because this claim is untimely and meritless, summary denial was proper.

This claim was filed in Ford's January 18, 2025, third successive motion for postconviction relief, nearly twenty-three years after his convictions and sentences became final.  And even assuming that Ford could not have raised the legal basis of this claim until *Roper* was issued in 2005, his claim is still nearly two decades too late.  Ford does not allege that any of the exceptions in rule 3.851(d)(2) apply to this claim.[4,5]  Thus, this claim was properly denied as untimely.

---

4.  Although the circuit court believed that Ford was raising a newly discovered evidence claim based on the results of the neuropsychological testing done by Dr. Hyman Eisenstein on January 16, 2025, Ford stated more than once during the case management conference that this was not a newly discovered evidence claim.

5.  Ford alleged in his third successive motion that this claim was timely raised because it was "not fully ripe until the signing of Ford's death warrant on January 10, 2025, [and] the expert evaluation of Ford that occurred on January 16, 2025."  But Ford has not explained in the circuit court or this Court why the claim was not previously "ripe."  The signing of the warrant has nothing to do with whether Ford is eligible for execution based on his mental age, which has remained stable for the last twenty-five years.  Nor does he explain why the January 16, 2025, evaluation was not done until the warrant was signed or why its results were necessary to

- 10 -

Moreover, this Court has repeatedly rejected the argument that *Roper*'s holding that the execution of an individual who was younger than eighteen years at the time of the murder(s) violates the Eighth Amendment should be extended to defendants whose mental or developmental age was less than eighteen at the time of their offenses. *E.g., Barwick v. State*, 88 So. 3d 85, 106 (Fla. 2011) (rejecting claim that *Roper* should extend to Barwick, who was nineteen when he committed the crimes, because his mental age was less than eighteen); *Stephens v. State*, 975 So. 2d 405, 427 (Fla. 2007) (rejecting claim that *Roper* and the Eighth Amendment barred execution of defendant who had a mental and emotional age of less than eighteen years because his chronological age at the time of his crimes was twenty-three); *Hill v. State*, 921 So. 2d 579, 584 (Fla. 2006) (rejecting an extension-of-*Roper* claim and holding "*Roper* only prohibits the execution of those defendants whose *chronological* age is below eighteen"). And because Ford was thirty-six at the time of the murders, it is impossible for him to

---

raise this claim that is based on information that has been known to Ford for over twenty-five years.

demonstrate that he falls within the ages of exemption, rendering his claim facially insufficient and therefore properly summarily denied. *See Morton v. State*, 995 So. 2d 233, 245 (Fla. 2008) ("Because it is impossible for Morton to demonstrate that he falls within the ages of exemption, his claim is facially insufficient and it was proper for the court to deny Morton a hearing on this claim.").

We have also explained that such claims are

> without merit because this Court lacks the authority to extend *Roper*. The conformity clause of article I, section 17 of the Florida Constitution provides that "[t]he prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." This means that the Supreme Court's interpretation of the Eighth Amendment is both the floor and the ceiling for protection from cruel and unusual punishment in Florida, and this Court cannot interpret Florida's prohibition against cruel and unusual punishment to provide protection that the Supreme Court has decided is not afforded by the Eighth Amendment.
>     Because the Supreme Court has interpreted the Eighth Amendment to limit the exemption from execution to those whose chronological age was less than eighteen years at the time of their crimes, this Court is bound by that interpretation and is precluded from interpreting Florida's prohibition against cruel and unusual punishment to exempt individuals eighteen or more years

old from execution on the basis of their age at the time of their crimes.

*Barwick*, 361 So. 3d at 794 (alteration in original).

Ford is not entitled to relief on this claim.

## C.  *Erlinger*

Ford argues that the circuit court erred in denying his claim that executing him would violate his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments in light of the United States Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024).  Under this claim, he had raised two subclaims: (i) Ford's Fifth Amendment due process rights and Sixth Amendment right to a unanimous jury, as selectively incorporated through the Fourteenth Amendment, are being violated, considering *Erlinger*; and (ii) this new consideration of Ford's proceedings further establishes that his death sentence is arbitrary and capricious, in violation of the Eighth Amendment.  Ford conceded that this claim could be resolved without an evidentiary hearing, and it was summarily denied as untimely, procedurally barred, and meritless.

As the circuit court noted, the first sentences Ford wrote under this claim in his third successive motion were:

Ford's death sentences are contrary to *Hurst v. Florida*, 577 U.S. 92 (2016)[,] and is [sic] in violation of Florida Statutes, section 921.141. He unequivocally asserts that based on *Hurst*, he was denied his right to a jury determination, proof beyond a reasonable doubt, and unanimity under the Sixth and Fourteenth Amendments. As a result of Florida's failure to remedy these violations, Ford's sentences violate the Eighth Amendment's bar against excessive, arbitrary, and capricious punishment and equal protection under the Fourteenth Amendment.

*Erlinger* was not mentioned, and the "unequivocal[] assert[ion]" that Ford "was denied his right to a jury determination" "based on *Hurst*" identified this as essentially a *Hurst* claim.

On appeal, Ford modified the opening sentence to this claim so that it mentions *Erlinger*. It now reads: "The *Erlinger . . .* decision is a reminder that Ford's death sentences are contrary to *Hurst v. Florida*, 577 U.S. 92 (2016)[,] and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016)."[6] But this change only confirms that this is a *Hurst*

---

6. In *Hurst*, the United States Supreme Court held that Florida's capital sentencing scheme was unconstitutional because it "required the judge alone to find the existence of an aggravating circumstance." 577 U.S. at 103. On remand from *Hurst*, this Court held in *Hurst v. State* that "before a sentence of death may be considered by the trial court in Florida, the jury must find the existence of the aggravating factors proven beyond a reasonable doubt, that the aggravating factors are sufficient to impose death, and that the aggravating factors outweigh the mitigating circumstances." 202 So. 3d at 53. This Court then determined

- 14 -

claim, as the allegation is that his sentences are contrary to *Hurst,* not *Erlinger.* Ford has also forgotten to include the very important subsequent history of *Hurst v. State,* in which "we recede[d] from *Hurst v. State* except to the extent it requires a jury unanimously to find the existence of a statutory aggravating circumstance beyond a reasonable doubt." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020).

*Erlinger* does not apply to this case. It involved the federal Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), which imposes enhanced, lengthy, mandatory minimum prison terms on certain defendants who have committed three violent felonies or serious drug offenses on separate occasions. *Erlinger*, 602 U.S. at 825. The question presented in *Erlinger* was "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury

that *Hurst* does not apply retroactively to cases in which the death sentence became final before the issuance of *Ring v. Arizona*, 536 U.S. 584 (2002), *Asay,* 210 So. 3d at 22, nor does *Hurst v. State, Hitchcock v. State,* 226 So. 3d 216, 217 (Fla. 2017). Four years after deciding *Hurst v. State,* this Court "recede[d] from *Hurst v. State* except to the extent it requires a jury unanimously to find the existence of a statutory aggravating circumstance." *State v. Poole,* 297 So. 3d 487, 507 (Fla. 2020).

- 15 -

to make that determination beyond a reasonable doubt." *Id.* The Court concluded that a jury must resolve the "ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Id.* at 835. But *Erlinger* was a direct-appeal case—not a postconviction case like Ford's—and it involved required jury findings regarding an element. Based on these fundamental distinctions, it is clear that *Erlinger* provides no support for vacating Ford's death sentences.

Based on his opening sentence to this claim on appeal that *Erlinger* is a reminder that Ford's death sentences are contrary to *Hurst* and *Hurst v. State*, we agree with the circuit court that this claim is properly interpreted as a *Hurst* claim. Referencing both his first and second successive motions for postconviction relief, Ford admits that he "has consistently attempted to litigate issues regarding the proper responsibility of jurors in capital sentencing." He also admits that in his first successive motion, he "specifically challenged the lack of juror unanimity in his death recommendation." *See Ford,* 168 So. 3d at 224 (affirming summary denial of claim "challenging this Court's general jurisprudence that nonunanimous jury recommendations of the death sentence are constitutional"). In his second successive motion for postconviction

relief, filed in 2017, Ford argued at length that he was entitled to relief under *Hurst* and *Hurst v. State*. His claims were again summarily denied and affirmed on appeal. *Ford*, 237 So. 3d at 905. As this Court has held that neither *Hurst* nor *Hurst v. State* apply retroactively to Ford's case, this claim was properly denied as procedurally barred and meritless.

Even if not procedurally barred and even if *Hurst* did apply retroactively to Ford, he would still not be entitled to relief. Ford complains that the instructions to his jury "only indicated they should consider aggravating circumstances found to have been proven beyond a reasonable doubt," but "no factual findings were ever made." To the contrary, by convicting Ford of the contemporaneous murder and sexual battery with a firearm of Kimberly Malnory at the guilt phase, the jury found beyond a reasonable doubt the aggravator that "[t]he defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person," § 921.141(5)(b), Fla. Stat. (1997). This Court decided a decade ago that those findings "satisfy[] the constitutional requirements." *Ford*, 168 So. 3d at 224 ("Thus, at the guilt phase the jury unanimously found that Ford

committed another capital felony, the contemporaneous murder, and the fact that both murders were committed during the commission of a sexual battery, satisfying the constitutional requirements."). We reject Ford's claim that he "never had an actual jury during his sentencing proceedings" and his categorization of his penalty phase jury as not "an actual jury" but merely an "advisory panel."

Ford also argues that his sentencing order does not specify the standard of proof the court used to find that the aggravating factors outweighed the mitigating circumstances. This Court has squarely rejected arguments that whether the aggravating factors outweighed the mitigating circumstances is a determination that must be made beyond a reasonable doubt. *See Rogers v. State*, 285 So. 3d 872, 885-86 (Fla. 2019) (holding that determinations of whether the aggravating factors were sufficient to justify the death penalty and whether those factors outweighed the mitigating circumstances are not subject to the beyond a reasonable doubt standard of proof); *Davidson v. State*, 323 So. 3d 1241, 1247 (Fla. 2021); *Craft v. State*, 312 So. 3d 45, 57 (Fla. 2020); *Santiago-Gonzalez v. State*, 301 So.

3d 157, 177 (Fla. 2020); *Bright v. State*, 299 So. 3d 985, 998 (Fla. 2020); *Doty v. State*, 313 So. 3d 573, 577 (Fla. 2020).

Ford's second subclaim focuses on the allegation that his sentence is arbitrary and capricious, in violation of the Eighth Amendment. He argues that his sentence is arbitrary because he missed the cutoff to have *Hurst* applied retroactively to his sentences by only twenty-seven days. But, as explained above, even if a *Hurst* claim were not procedurally barred and *Hurst* applied to Ford, he would not be entitled to relief, because his jury also found him guilty of the contemporaneous murder and sexual battery, which satisfies the constitutional requirement that a jury unanimously find the existence of an aggravating factor beyond a reasonable doubt.

Ford also continues to claim that he did not have a jury at his penalty phase but only an advisory panel, "unlike all post-*Hurst* defendants" who have "an actual sworn jury" to avoid being "condemned to death in an arbitrary and capricious manner." Ford did have an actual sworn jury at his penalty phase. It was the same actual sworn jury that found him guilty of the

contemporaneous murder and sexual battery during the guilt phase.

If Ford is presenting an actual argument[7] that the instructions to his jury that its sentencing recommendation was only advisory are contrary to *Caldwell v. Mississippi*, 472 U.S. 320 (1985), it is both untimely and meritless. This Court has already rejected such an argument in *Allen v. State*, 322 So. 3d 589, 597 (Fla. 2021).

Ford's final argument that under the evolving standards of decency, he cannot be sentenced to death unless a jury unanimously determines that the aggravating factors are sufficient for the imposition of death and that they outweigh the mitigation is procedurally barred, untimely, and meritless. Ford relies on *Hurst v. State* in making this argument. But as explained above, we have "recede[d] from *Hurst v. State* except to the extent it requires a jury unanimously to find the existence of a statutory aggravating

___

7. Ford phrased this argument hypothetically: "[T]he advisory panel was instructed that, although the court was required to give great weight to its recommendation, the recommendation was only advisory. *Had this been* an actual jury trial, this *would have been* contrary to *Caldwell v. Mississippi*, 472 U.S. 320 (1985) . . . ." (Emphasis added.)

circumstance beyond a reasonable doubt." *Poole*, 297 So. 3d at 507. And we have repeatedly declined invitations to reconsider *Poole*. *E.g.*, *Herard v. State*, 390 So. 3d 610, 623 (Fla. 2024); *Wells v. State*, 364 So. 3d 1005, 1014-15 (Fla.), *cert. denied*, 144 S. Ct. 385 (2023); *McKenzie v. State*, 333 So. 3d 1098, 1105-06 (Fla. 2022); *Davidson*, 323 So. 3d at 1248. And the Supreme Court's decision in *McKinney v. Arizona*, 589 U.S. 139, 144 (2020), confirms that our decision in *Poole* was correct. *See id.* ("Under *Ring* and *Hurst*, a jury must find the aggravating circumstance that makes the defendant death eligible. But importantly, in a capital sentencing proceeding just as in an ordinary sentencing proceeding, a jury (as opposed to a judge) is not constitutionally required to weigh the aggravating and mitigating circumstances or to make the ultimate sentencing decision within the relevant sentencing range."). Since *Poole* was not wrongly decided, Ford's argument that his execution will result in a manifest injustice is devoid of merit.

## III. CONCLUSION

For the reasons stated, we affirm the circuit court's order summarily denying Ford's third successive motion for postconviction relief.

No motion for rehearing will be considered by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Charlotte County,
 Lisa Spader Porter, Judge
 Case No. 081997CF0003510001XX

Eric Pinkard, Capital Collateral Regional Counsel, Ali Shakoor, Assistant Capital Collateral Regional Counsel, and Adrienne Joy Shepherd, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

   for Appellant

John M. Guard, Acting Attorney General, Tallahassee, Florida, and Christina Z. Pacheco, Senior Assistant Attorney General, Stephen D. Ake, Senior Assistant Attorney General, and Jonathan S. Tannen, Assistant Attorney General, Tampa, Florida,

   for Appellee